**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
In re Investment Technology Group, Inc.     :
Securities Litigation     :
    :
    :
    :
    :    No. 15 Civ. 6369 (JFK)
    :
    :    Consolidated
    :
    :
    :
    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement (the "Stipulation"), dated as of August 6, 2018, is entered into between and among the following parties, by and through their respective undersigned counsel: (i) Metzler Asset Management GmbH ("Metzler" or "Lead Plaintiff"), on behalf of itself and the Class (defined below); (ii) defendant Investment Technology Group, Inc. ("ITG" or the "Company"); and (iii) defendant Robert C. Gasser ("Gasser" and, together with ITG, the "Defendants").[1]  This Stipulation embodies the terms and conditions of the settlement of the above-captioned action (the "Action").  Subject to the approval of the Court and upon and subject to the terms and conditions provided herein, this Stipulation is intended to fully, finally and forever compromise, settle, release, resolve, relinquish, waive, discharge and dismiss with prejudice the Action and all claims asserted therein, and all Settled Claims (defined below) as against the Defendant Released Parties (defined below).

WHEREAS:

A.      On July 29, 2015, ITG publicly announced that it was reserving $20.3 million for a probable settlement with the U.S. Securities and Exchange Commission ("SEC") in connection

---

[1] All terms with initial capitalization not otherwise defined shall have the meanings ascribed to them in ¶ 1 herein.

with the SEC's investigation into a proprietary trading pilot operated within an ITG subsidiary in 2010 and 2011.   On August 12, 2015, the SEC issued an order instituting administrative and cease-and-desist proceedings against two ITG subsidiaries for violating Sections 17(a)(2) and 17(a)(3) of the Exchange Act of 1934 and Rules 301(b)(2) and 301(b)(1) of Regulation ATS in connection with this pilot, which was code-named "Project Omega," and ordered those subsidiaries to pay an $18 million civil money penalty in addition to disgorgement of roughly $2 million and prejudgment interest of $256,532.

B.      On August 5, 2015, Rajesh Shah, individually and on behalf of all others similarly situated, filed a Class Action Complaint for Violations of the Federal Securities Laws in the United States District Court for the Central District of California (the "Shah Action") that asserted claims against Defendants, and against Steven Vigliotti ("Vigliotti"), for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.   On August 12, 2015, Christine M. Bernacchi, individually and on behalf of all others similarly situated, filed another Class Action Complaint in the United States District Court for the Southern District of New York (the "Bernacchi Action") that also asserted claims against Defendants, Vigliotti, and Mats Goebels ("Goebels") for violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5.

C.      On October 15, 2015, the court in the Shah Action entered an order transferring that action to the United States District Court for the Southern District of New York and, subsequently, the Court consolidated the Shah Action and the Bernacchi Action for all purposes. Also on October 15, 2015, under Section 21D(a)(3)(B) of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(a)(3)(B), the Court entered an order in the Bernacchi Action appointing Metzler as Lead Plaintiff for the proposed plaintiff class and Motley Rice LLC as Lead Counsel for the proposed plaintiff class.

D.      On December 14, 2015, Lead Plaintiff filed and served its Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws (the "CAC").   The CAC asserted claims against ITG, Gasser, Vigliotti, and Goebels under Section 10(b) of the Exchange

Act and Rule 10b-5 promulgated thereunder and against Gasser, Vigliotti, and Goebels under Section 20(a) of the Exchange Act, alleging, *inter alia*, that these defendants made, or controlled others who made, allegedly materially false and misleading statements and failed to disclose certain material facts regarding Project Omega.  The CAC further alleged that these material misstatements and omissions caused the price of ITG common stock to be artificially inflated.

E.      On February 16, 2016, Defendants, Vigliotti, and Goebels moved to dismiss the CAC.  On April 26, 2017, the Court granted in part and denied in part the motion to dismiss. The Court dismissed all of the claims against Vigliotti and Goebels and some of the claims against ITG and Gasser.  The Court permitted the remaining claims against ITG and Gasser to proceed.

F.      On June 12, 2017, Lead Plaintiff filed a Motion for Leave to File a Second Amended Class Action Complaint ("Motion to Amend") seeking to plead claims against Vigliotti and Goebels.

G.      While awaiting the Court's ruling on Lead Plaintiff's Motion to Amend, the Parties (defined below) engaged David Geronemus, an experienced and respected mediator.  The Parties participated in a mediation session on October 6, 2017 and several follow-up discussions assisted by Mr. Geronemus.  In advance of the October 6, 2017 mediation session, ITG produced to Lead Plaintiff certain documents and SEC on-the-record interview transcripts related to Project Omega.

H.      On March 23, 2018, the Court denied Lead Plaintiff's Motion to Amend.

I.      Following the denial of Lead Plaintiff's Motion to Amend, the Parties reached an agreement in principle to settle the Action for $18,000,000.  The Parties memorialized the agreement in a term sheet (the "Term Sheet") executed on April 19, 2018.

J.      This Stipulation (together with the exhibits hereto) has been duly executed by the undersigned signatories on behalf of their respective clients, and reflects the final and binding agreement between and among the Parties.

K.      Lead Plaintiff has agreed to settle and release the claims raised in the Action pursuant to the terms and provisions of this Stipulation, after considering:  (a) the financial benefit that Lead Plaintiff and the other members of the Class will receive; (b) the risks of continued litigation and trial; and (c) the desirability of permitting the Settlement to be consummated as provided by the terms of this Stipulation.  Based upon their investigation and review of materials produced by Defendants during mediation, and subject to the completion of reasonable confirmatory discovery, Lead Plaintiff and Lead Counsel believe that the terms and conditions of this Stipulation are fair, reasonable and adequate to Lead Plaintiff and other members of the Class.

L.      Defendants are entering into this Stipulation solely to eliminate the uncertainty, burden and expense of further protracted litigation.   Each of the Defendants denies any wrongdoing, and this Stipulation shall not be construed as or deemed to be evidence of an admission or concession with respect to any claim or allegation of any fault, liability, or wrongdoing by Defendants or the Defendant Released Parties.  Defendants expressly deny that Lead Plaintiff has asserted any valid claims as to any of them or any of the Defendant Released Parties, and expressly deny any and all allegations of fault, liability, wrongdoing or damages whatsoever.  Similarly, this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of Lead Plaintiff, or any other of the Plaintiff Released Parties (defined below) of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit.

M.      Each of the Parties recognizes and acknowledges that the Action has been initiated, filed, and prosecuted and defended in good faith, and that the Action is being voluntarily settled with the advice of counsel.

NOW THEREFORE, it is hereby STIPULATED AND AGREED:

## I.  DEFINITIONS

1.      As used in this Stipulation, the following terms have the meanings specified below.

(a)      "Action" means *In re Investment Technology Group, Inc. Securities Litigation*, Civil Action No. 15 Civ. 6369 (JFK) (S.D.N.Y.).

(b)      "Authorized Claimant" means a Class Member who submits a Claim Form to the Claims Administrator that is approved by the Court for payment from the Net Settlement Fund.

(c)      "Claim" means a Claim Form submitted to the Claims Administrator.

(d)      "Claim Form" means the form, substantially in the form attached hereto as **Exhibit D**, that a Claimant must complete and submit should that Claimant seek to share in a distribution of the Net Settlement Fund.

(e)      "Claimant" means a person or entity who or which submits a Claim Form to the Claims Administrator seeking to be eligible to share in the proceeds of the Settlement Fund.

(f)      "Claims Administrator" means GCG, the firm retained by Lead Plaintiff and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Class Members and to administer the Settlement.

(g)      "Class" means all persons and entities who purchased or otherwise acquired ITG common stock during the period of February 28, 2011 to and through August 3, 2015, inclusive, and who were damaged thereby.  Excluded from the Class are Defendants; Vigliotti and Goebels; ITG's affiliates and subsidiaries; the officers and directors of ITG and its affiliates and subsidiaries at all relevant times; members of the immediate family of any excluded person; heirs, successors, and assigns of any excluded person or entity; and any entity in which any excluded person has or had a controlling interest.

5

(h)　"Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

(i)　"Class Member" means any and each person and entity who or which is a member of the Class.

(j)　"Class Period" means the period February 28, 2011 to and through August 3, 2015, inclusive.

(k)　"Complaint" or "CAC" means the Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws filed by Lead Plaintiff on December 14, 2015.

(l)　"Court" means the United States District Court for the Southern District of New York.

(m)　"Defendants" means ITG and Gasser.

(n)　"Defendants' Counsel" means the law firms of Wachtell, Lipton, Rosen & Katz (counsel for ITG), and Paul, Weiss, Rifkind, Wharton & Garrison LLP (counsel for Gasser).

(o)　"Defendant Released Parties" means any and all defendants named in any of the complaints filed in the Action and any and all of their related parties, including, without limitation, any and all of their past or present parents, subsidiaries, affiliates, predecessors, or successors, as well as any and all of its or their current or former officers, directors, employees, associates, members of their immediate families, agents or other persons acting on their behalf, underwriters, insurers, reinsurers, attorneys, advisors, financial advisors, publicists, independent certified public accountants, auditors, accountants, assigns, creditors, administrators, heirs, estates, or legal representatives.

(p)　"Effective Date" with respect to the Settlement means the first date by which all of the events and conditions specified in ¶ 36 of this Stipulation have been met and have occurred or have been waived.

(q)     "Escrow Account" means an account maintained at The Huntington National Bank, which account shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds therein are distributed pursuant to this Stipulation and/or further order(s) of the Court, and into which the Settlement Amount shall be deposited and held in escrow.

(r)     "Escrow Agent" means The Huntington National Bank.

(s)     "Final" means when the Judgment in this Action has not been reversed, vacated, or modified in any way, and is no longer subject to appellate review by any court, including the Supreme Court of the United States.  However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs or expenses, or (ii) the plan of allocation of Settlement proceeds (as submitted or subsequently modified), shall not in any way delay or preclude the Judgment from becoming Final.

(t)     "Insurers" means any and all of the Defendant Released Parties' D&O insurance carriers, including, but not limited to, those D&O insurance carriers who may contribute to the payment of the Settlement Amount.

(u)     "Judgment" means the final judgment and order, substantially in the form attached hereto as **Exhibit B**, to be entered by the Court approving the Settlement, and dismissing the Action with prejudice.

(v)     "Lead Counsel" means the law firm of Motley Rice LLC.

(w)     "Lead Plaintiff" means Metzler Asset Management GmbH.

(x)     "Litigation Expenses" means costs and expenses incurred in connection with commencing, prosecuting and settling the Action, for which Lead Counsel intends to apply to the Court for reimbursement from the Settlement Fund.

(y)     "Net Settlement Fund" means the Settlement Fund less:  (i) any Taxes; (ii) any Notice and Administration Costs; (iii) any Litigation Expenses awarded by the Court;

(iv) any attorneys' fees awarded by the Court; and (v) any award to Lead Plaintiff made by the Court pursuant to the PSLRA for reasonable costs and expenses (including lost wages).

(z)     "Notice" means the Notice of (i) Pendency of Class Action, Certification of Class, and Proposed Settlement; (ii) Settlement Fairness Hearing; and (iii) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as **Exhibit A**, which is to be mailed to the Class Members.

(aa)     "Notice and Administration Costs" means the costs, fees, and expenses that are incurred by the Claims Administrator and/or Lead Counsel in connection with (i) providing notices to the Class; and (ii) administering the Settlement, including, but not limited to, the Claims process, as well as the costs, fees, and expenses incurred in connection with the Escrow Account.

(bb)     "Parties" means (i) Defendants, and (ii) Lead Plaintiff, on behalf of itself and the Class Members.

(cc)     "Plaintiff Released Parties" means Lead Plaintiff and any other Class Member, and any and all of their related parties, including, without limitation, any and all of their past or present parents, subsidiaries, affiliates, predecessors, or successors, as well as any and all of their current or former officers, directors, employees, associates, members of their immediate families, agents or other persons acting on their behalf, underwriters, attorneys, advisors, financial advisors, publicists, independent certified public accountants, auditors, accountants, assigns, creditors, administrators, heirs, estates, or legal representatives.  For the avoidance of doubt, Plaintiff Released Parties do not include any Insurer.

(dd)     "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund, proposed by Lead Counsel and approved by the Court, that is set forth in the Notice.

(ee)     "Preliminary Approval Order" means the order, substantially in the form attached hereto as **Exhibit C**, to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Class.

(ff)     "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.*, as amended.

(gg)     "Releases" means the releases set forth in ¶¶ 5-9 of this Stipulation.

(hh)     "Released Parties" means Plaintiff Released Parties and Defendant Released Parties.

(ii)     "Settled Defendants' Claims" means any and all claims, including Unknown Claims, that Defendants asserted, or could have asserted, against the Plaintiff Released Parties that arise out of or relate in any way to the institution, prosecution, or settlement of the Action, except for claims relating to the enforcement of the Settlement.  Notwithstanding any other provision to the contrary herein, Settled Defendants' Claims shall not include any claims by the Defendant Released Parties against any Insurer.

(jj)     "Settled Claims" means any and all manner of claims, actions, causes of action, potential actions, suits, controversies, costs, damages, losses, obligations, liabilities, judgments, and demands whatsoever, known or unknown, suspected or unsuspected, accrued or unaccrued, whether class, individual, or otherwise, arising under the laws, regulations, or common law of the United States of America, any state or political subdivision thereof, or any foreign country or jurisdiction, in law, in contract, or in equity, and regardless of legal theory, and including claims for indemnification, contribution, or otherwise denominated, that Lead Plaintiff or any other member of the Class (i) asserted in any complaint filed in the Action or (ii) could have asserted in any forum that arise out of or are based upon, in whole or in part, directly or indirectly, any allegations, facts, matters, occurrences, representations, actions, omissions, failures to act, statements, or disclosures involved, set forth, or referred to in any complaint filed in the Action and that relate in any way to the purchase, sale, or holding of ITG common stock during the Class Period.  Notwithstanding the foregoing, excluded from the definition of "Settled Claims" are:  (1) claims to enforce the Settlement; and (2) the derivative claims asserted on behalf of ITG in the action styled *Watterson v. Gasser, et. al*, Index No. 653933/2105 (Sup. Ct. N.Y. Cty.); provided, however, that any individual claim of any

9

plaintiff in such action as a Class Member will not be excluded from the definition of "Settled Claims."  (Defendants represent that, to the best of their knowledge, the *Watterson* action is the only derivative action currently pending against former and/or current officers and directors of ITG relating to their service on behalf of ITG.)

(kk)   "Settlement" means this Stipulation of Settlement and the settlement contained herein.

(ll)   "Settlement Amount" means Eighteen Million Dollars ($18,000,000) in cash paid or to be paid into the Escrow Account by ITG and/or the Insurers who are contributing to the Settlement.

(mm)   "Settlement Fund" means the Settlement Amount plus accrued interest.

(nn)   "Stipulation" means this Stipulation of Settlement.

(oo)   "Summary Notice" means the Summary Notice, substantially in the form attached hereto as **Exhibit E**, to be published as set forth in the Preliminary Approval Order.

(pp)   "Supplemental Agreement" means the Supplemental Agreement as defined in ¶ 40 below.

(qq)   "Taxes" means (i) all federal, state, local and/or foreign taxes of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) arising with respect to the Settlement Fund (including any taxes for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, if any); and (ii) the reasonable expenses and costs incurred by the Escrow Agent in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, reasonable expenses of tax attorneys and accountants).

(rr)   "Unknown Claims" means (i) any and all Settled Claims which Lead Plaintiff or any other Class Member, or each of their agents or attorneys, or their current or former officers, directors, or employees, does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and (ii) any Settled Defendants' Claims which any

10

Defendant or each of their agents or attorneys, or their current or former officers, directors or employees, does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which in the case of both (i) and (ii) if known by him, her, or it, might have affected his, her, or its decision(s) with respect to this Settlement, including, without limitation, his, her, or its decision not to object to this Settlement, or not to exclude himself, herself, or itself from the Class.  With respect to any and all Settled Claims, the Parties stipulate and agree that, upon the Effective Date of the Settlement, Lead Plaintiff and Defendants shall expressly waive, and each of the other Class Members and each of the other Released Parties shall be deemed to have waived, and by operation of the Judgment, shall have expressly waived, any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

Lead Plaintiff and Class Members acknowledge, and shall be deemed by operation of law to have acknowledged, that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of this Settlement, but that it is their intention to release and settle fully, finally, and forever any and all of the Settled Claims, subject to the terms and conditions provided herein, and in furtherance of such intention, the Releases shall be and remain in effect notwithstanding the discovery or existence of any such additional or different facts.  Lead Plaintiff and Defendants acknowledge, and each of the other Class Members and each of the other Released Parties shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

## II.   STIPULATION OF CLASS CERTIFICATION

2.      Solely for the purposes of this Settlement, the Parties stipulate to the certification of a Class (as defined in ¶ 1(g)), pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure.  The certification of the Class shall be binding only with respect to the Settlement of the Action and only if the Judgment contemplated by this Stipulation becomes Final and the Effective Date occurs.

## III.   CONFIRMATORY DISCOVERY

3.      This Settlement is subject to reasonable confirmatory discovery to be agreed upon by the Parties.  The Parties will make reasonable best efforts to conclude this confirmatory discovery within 75 calendar days following the date of this Stipulation.  The Parties agree that if any disputes arise as to the nature or scope of confirmatory discovery, the Parties shall refer them to the mediator, Mr. Geronemus, for binding resolution.  After Lead Counsel has completed confirmatory discovery, but no later than October 31, 2018, Lead Plaintiff will have the right and ability in its sole discretion to declare the Settlement void by providing written notice of that election to Defendants' Counsel.

## IV.   PRELIMINARY APPROVAL OF SETTLEMENT

4.      Within a reasonable time after Lead Plaintiff's completion of the confirmatory discovery described in ¶ 3, Lead Plaintiff will move for preliminary approval of the Settlement, certification of the Class for settlement purposes only (in accordance with ¶ 1(g)), and the scheduling of a hearing for consideration of final approval of the Settlement.  Concurrently with the motion for preliminary Court approval, Lead Plaintiff shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as **Exhibit C**.

## V.   RELEASE OF CLAIMS

5.      The obligations incurred pursuant to this Stipulation are in consideration of the full and final disposition of the Action as against Defendants and shall fully, finally, and forever

compromise, settle, release, resolve, relinquish, waive, discharge and dismiss with prejudice, the Action and any and all Settled Claims against each and all of the Defendant Released Parties upon the occurrence of the Effective Date.

6.      Pursuant to the Judgment, without further action by anyone, upon the Effective Date, Lead Plaintiff and each of the other Class Members (whether or not such person submitted a Claim Form), on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, affiliates, agents, attorneys, representatives, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Settled Claim (including, without limitation, any Unknown Claims) against any and all of the Defendants and any and all of the other Defendant Released Parties, and shall forever be barred and enjoined from prosecuting any and all of the Settled Claims against any and all of the Defendant Released Parties.

7.      Lead Plaintiff covenants, on its own behalf and on behalf of the Class, not to sue any Defendant Released Party on the basis of any of the Settled Claims or to assist any person in commencing or maintaining any suit relating to any Settled Claim.  This covenant does not include claims to enforce the Settlement.

8.      Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and their respective heirs, executors, administrators, predecessors, successors, affiliates, agents, attorneys, representatives, and assigns in their capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Settled Defendants' Claim (including, without limitation, any Unknown Claims) against Lead Plaintiff and the other Plaintiff Released Parties, and shall forever be barred and enjoined from prosecuting any or all of the Settled Defendants' Claim against any and all of the Plaintiff Released Parties.  This Release shall not

apply to any person or entity who or which submits a request for exclusion from the Class that is accepted by the Court.

9.      The terms of 15 U.S.C. § 78u-4(f)(7) shall apply to this Settlement, including that each Defendant shall be discharged from all claims for contribution brought by other persons, and the Judgment shall so provide.  The Judgment shall include a bar order constituting the final discharge of all obligations to any member of the Class of each of the Defendant Released Parties arising out of the Action and shall bar all future claims for contribution arising out of the Action by any person against any of the Defendant Released Parties.

10.     Notwithstanding ¶¶ 5-9 above, nothing in the Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Judgment.

## VI.   THE SETTLEMENT CONSIDERATION

11.     In consideration of the settlement of the Settled Claims, Defendants shall cause the Settlement Amount to be paid into the Escrow Account no later than fifteen (15) business days after the later of (i) the date of entry by the Court of an order preliminarily approving this Settlement; or (ii) ITG's receipt from Lead Counsel of all information necessary to accomplish payment of the Settlement Amount via check or wire transfer, including information as to payee, mailing address, bank account number, name of bank, and bank address, a Sort Code or ABA Routing Number, the currency of the account receiving the funds, wire transfer instructions, the Tax Identification Number (TIN), and a copy of the W-9 for the Escrow Account.  The Settlement Amount shall cover the entirety of Defendants' monetary obligation in connection with the resolution of the Action pursuant to this Stipulation.

## VII.   USE OF SETTLEMENT FUND

12.     The Settlement Fund shall be used to pay:  (a) any Taxes, (b) any Notice and Administration Costs, (c) any Litigation Expenses awarded by the Court, (d) any attorneys' fees awarded by the court, and (e) any award to Lead Plaintiff made by the Court pursuant to the PSLRA for reasonable costs and expenses (including lost wages).  Defendants and their Insurers

shall have no responsibility for the costs and/or expenses referenced in items (a) through (e) of this paragraph.  The balance remaining in the Settlement Fund, that is, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶ 23-34 below.

13.     Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date.  All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court.  At the written direction of Lead Counsel, the Escrow Agent:  (i) shall invest any funds in the Escrow Account exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government; and (ii) shall reinvest the proceeds of these instruments or accounts as they mature in similar instruments or accounts at their then-current market rates.

14.     The Parties agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1, and Lead Counsel or its designee, as the "administrator" of the Settlement Fund within the meaning of Treas. Reg. § 1.468B-2(k)(3), shall direct the Escrow Agent to treat the Settlement Fund as being at all times such a "qualified settlement fund."   In addition, Lead Counsel and its designee shall be authorized and directed to timely make such elections as are necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1(j)) back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.  ITG also agrees to obtain from the applicable Insurers and provide promptly to Lead Counsel and/or its designee the statement described in Treas. Reg. § 1.468B-3(e).  Lead Counsel shall, or shall authorize its

15

designee to, timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter cause all necessary documentation to be filed.

15.     Lead Counsel and its designee shall be authorized and directed to timely and properly file all income tax returns and other information necessary or advisable with respect to the Settlement Fund.  Such returns (as well as the elections described above) shall be consistent with the terms herein and in all events shall reflect that all Taxes with respect to the Settlement Fund shall be paid out of the Settlement Fund as provided herein.

16.     Lead Counsel and its designee shall be authorized and directed to timely and properly pay all Taxes from the Settlement Fund.  Defendant Released Parties shall not have any liability or responsibility for the payment or non-payment of any Taxes.  Lead Counsel and its designee shall indemnify and hold each of the Defendant Released Parties harmless for any Taxes (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes shall be treated as, and considered to be, a cost of administration of the Settlement Fund, and shall be timely paid out of the Settlement Fund without prior order of the Court, and the Claims Administrator shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds necessary to pay such amounts, including the establishment of adequate reserves for any Taxes; Defendant Released Parties shall not have any responsibility or liability therefor.  The Parties agree to cooperate with the administrator of the Settlement Fund, each other, and its or their tax attorneys and accountants to the extent reasonably necessary to carry out the provisions of this paragraph.  Defendant Released Parties shall not have any responsibility for, or liability whatsoever with respect to, the acts or omissions of Lead Counsel or its designee, as described herein.

17.     The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, no Defendant, Defendant Released Party, Insurer or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof, irrespective of the number of Claims filed, the collective

amount of losses of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

18.     The Claims Administrator shall discharge its duties under Lead Counsel's supervision and subject to the jurisdiction of the Court.  Except as otherwise expressly provided herein, the Defendant Released Parties shall have no responsibility whatsoever for the administration of the Settlement, and shall have no liability whatsoever to any person, including, but not limited to, the Class Members, in connection with any such administration.  Lead Counsel shall cause the Claims Administrator to mail the Notice and Claim Form to those members of the Class at the address of each such person who may be identified through reasonable effort.  ITG shall provide or cause to be provided to the Claims Administrator shareholder lists necessary for, and other information ITG may have in its possession that may be reasonably necessary for locating, contacting, and providing notice to the Class.  Lead Counsel will cause to be published the Summary Notice pursuant to the terms of the Preliminary Approval Order or in whatever other form or manner might be ordered by the Court.

19.     Following entry of the Preliminary Approval Order, Lead Counsel may pay from the Escrow Account, without further approval from the Defendants or the Insurers or further order of the Court, all Notice and Administration Costs actually and reasonably incurred, up to an aggregate amount of five hundred thousand dollars ($500,000).  Such costs and expenses shall include, without limitation, the actual costs of publication, printing, and mailing the Notice, reimbursements to nominee owners for forwarding the Notice to their beneficial owners, the administrative expenses actually incurred and fees reasonably charged by the Claims Administrator in connection with providing Notice and processing the submitted claims, and the reasonable fees, if any, of the Escrow Agent.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation (including the Supplemental Agreement), all Notice and Administration Costs actually paid or incurred, including any related fees, will not be returned or repaid to the Defendants or the Insurers or any person or entity who or which paid any portion of the Settlement Amount.

## VIII.   ATTORNEYS' FEES AND LITIGATION EXPENSES

20.    Lead Counsel will apply to the Court for an award of attorneys' fees to be paid from (and out of) the Settlement Fund.  Lead Counsel also will apply to the Court for reimbursement of Litigation Expenses.  No Defendant or Insurer shall have responsibility for payment of attorneys' fees, Litigation Expenses and/or any award to Lead Plaintiff for its reasonable costs and expenses (including lost wages) pursuant to the PSLRA.  Lead Counsel's application for an award of attorneys' fees and/or Litigation Expenses is not the subject of any agreement between Defendants and Lead Plaintiff other than what is set forth in this Stipulation. Defendants do not intend to take any position on any such application for an award of attorneys' fees and/or Litigation Expenses.  Lead Counsel also may move the Court for an award to Lead Plaintiff for its reasonable costs and expenses (including lost wages) pursuant to the PSLRA. Defendants do not intend to take any position on such a request.

21.    Any attorneys' fees and Litigation Expenses that are awarded to Lead Counsel by the Court, as well as any award of reasonable costs and expenses to be made to Lead Plaintiff, shall be paid to Lead Counsel from the Settlement Fund within three (3) business days after entry of an order directing such payment, notwithstanding the existence of, or potential for, an appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Lead Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund or (if the Settlement is vacated or modified) to ITG and the Insurers (in proportion to the amount contributed by each), plus interest earned thereon if, and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, an award of attorneys' fees, Litigation Expenses, or reasonable costs or expenses to Lead Plaintiff is reduced or disapproved or the Judgment approving the Settlement is vacated or modified.  Lead Counsel shall make the appropriate refund or repayment in full no later than fifteen (15) days after (a) receiving from Defendants' Counsel notice of the termination of the Settlement; or (b) any order reducing or reversing the award of attorneys' fees, Litigation Expenses, or reasonable costs or expenses to Lead Plaintiff has become Final.  An award of attorneys' fees, Litigation Expenses, or reasonable

costs or expenses to Lead Plaintiff is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein. The fairness and reasonableness of the Settlement will be determined without regard to the payment of such awards, and no objection, motion, or appeal with respect to such awards shall affect the finality of the Judgment approving the Settlement or any Release related hereto. Neither Lead Plaintiff nor Lead Counsel may cancel or terminate the Settlement based on the Court's or any appellate court's ruling with respect to an award of attorneys' fees, Litigation Expenses, or reasonable costs or expenses to Lead Plaintiff.

22.     Defendant Released Parties shall have no responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or Litigation Expenses.

## IX.   CLAIMS ADMINISTRATOR

23.     The Claims Administrator shall administer the process of receiving, reviewing and approving or denying Claims subject to the jurisdiction of the Court. None of the Defendants, or any other Defendant Released Parties, shall have any responsibility whatsoever for the administration of the Settlement or the claims process and shall have no liability whatsoever to any Person, including, but not limited to, Lead Plaintiff, any other Class Members, or Lead Counsel, in connection with such administration. Defendants' Counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms.

24.     The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim (as defined in the Plan of Allocation set forth in the Notice attached hereto as **Exhibit A**, or in such other plan of allocation as the Court approves) compared to the total Recognized Claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Notice attached hereto as **Exhibit A**, or in such other plan of allocation as the Court approves).

25.     The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation, and it is not a condition of the Settlement or this Stipulation that

any particular plan of allocation be approved by the Court.  Lead Plaintiff and Lead Counsel may not cancel or terminate the Settlement (or the Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any plan of allocation in this Action.  No Defendant, or any other Defendant Released Party, shall have any involvement in or responsibility or liability whatsoever for the Plan of Allocation or the allocation of the Net Settlement Fund.

26.     Any Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund but will otherwise be bound by all of the terms of this Stipulation, including the terms of the Judgment to be entered in the Action and the Releases provided for herein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Defendant Released Parties with respect to the Settled Claims in the event that the Effective Date occurs with respect to the Settlement.

27.     Lead Counsel shall be responsible for supervising the administration of the Settlement and disbursement of the Net Settlement Fund subject to Court approval.  No Defendant, or any other Defendant Released Party, shall have any liability, obligation or responsibility whatsoever for the administration of the Settlement or disbursement of the Net Settlement Fund.  No Defendant, or any other Defendant Released Party, shall be permitted to review, contest or object to any Claim Form, or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment by a Class Member.  Lead Counsel shall have the right, but not the obligation, to waive what they deem to be formal, *de minimis*, or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

28.     For purposes of determining the extent, if any, to which a Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

(a)     Each Class Member shall be required to submit a Claim Form, substantially in the form attached hereto as **Exhibit D**, supported by such documents as are

designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

(b)     All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice.  Any Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless such Class Member's Claim Form is accepted by Order of the Court or at the discretion of Lead Counsel), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment, and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against any Defendant Released Party concerning any Settled Claim.  Provided that it is mailed by the claim-submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon.  In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

(c)     Each Claim Form shall be submitted to and reviewed by the Claims Administrator, under the supervision of Lead Counsel, who shall determine in accordance with this Stipulation and the Plan of Allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

(d)     Claim Forms that do not meet the submission requirements may be rejected.  Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted.  The Claims Administrator, under supervision of Lead Counsel, shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be rejected has the right to a

review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

(e)     If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within twenty (20) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

29.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms.

30.     Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account, and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

31.     Payment pursuant to the Class Distribution Order shall be final and conclusive against all Class Members.  All Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in this Action and the Releases provided for therein, and will

be permanently barred and enjoined from bringing any action against any and all Defendant Released Parties concerning any and all of the Settled Claims.

32.     No Person shall have any claim against Lead Plaintiff, Lead Counsel, the Claims Administrator or any other agent designated by Lead Counsel, or the Defendant Released Parties and/or their respective counsel, arising from distributions made substantially in accordance with the Stipulation, the Plan of Allocation, or any order of the Court.  Lead Plaintiff and Defendants, and their respective counsel, and all other Defendant Released Parties and their counsel shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund, the Plan of Allocation, or the determination, administration, calculation, or payment of any claim or nonperformance of the Claims Administrator, the payment or withholding of Taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

33.     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of this Court.  All Class Members expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

34.     To the extent that any monies remain in the Net Settlement Fund after the Claims Administrator has caused distributions to be made to all Authorized Claimants whether by reason of un-cashed distributions or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their distributions, any balance remaining in the Net Settlement Fund four (4) months after the initial distribution of such funds shall, if feasible and economical, be reallocated among Authorized Claimants who have cashed their checks in an equitable and economic fashion.  Any balance that still remains in the Net Settlement Fund, after payment of Notice and Administration Expenses, Taxes, attorneys' fees and Litigation Expenses, if any, and any award to Lead Plaintiff made pursuant to the PSLRA for

reasonable costs and expenses (including lost wages), shall be contributed to a non-profit to be mutually agreed upon by Lead Counsel and counsel for ITG.

## X.   TERMS OF THE JUDGMENT

35.     If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form attached hereto as **Exhibit B**, approving the Settlement and dismissing the Action with prejudice.

## XI.   CONDITIONS OF SETTLEMENT; EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION

36.     The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

(a)     The Court has entered the Preliminary Approval Order, substantially in the form set forth in **Exhibit C** attached hereto, as required by ¶ 4 above;

(b)     The Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of ¶ 11 above;

(c)     Defendants have not exercised any option to terminate the Settlement pursuant to the provisions of this Stipulation (including the Supplemental Agreement described in ¶ 40 below);

(d)     Lead Plaintiff has not exercised any option to terminate the Settlement pursuant to the provisions of this Stipulation;

(e)     The Court has approved the Settlement as described herein, following notice to the Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and entered the Judgment and the Judgment has become Final;

37.     Upon the occurrence of all of the events referenced in ¶ 36 above, any and all remaining interest or right of the Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the Releases herein shall be effective.

38.    If (i) Defendants exercise their right to terminate the Settlement as provided in this Stipulation; (ii) Lead Plaintiff exercises its right to terminate this Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur, then:

(a)    The Settlement and the relevant portions of this Stipulation shall be cancelled and terminated;

(b)    Lead Plaintiff and Defendants shall revert to their respective positions in the Action as of April 19, 2018;

(c)    The terms and provisions of this Stipulation, with the exception of this paragraph and ¶ 41 below, shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any Judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

(d)    Within five (5) business days after joint written notification of termination is sent by Defendants' Counsel and Lead Counsel to the Escrow Agent, the Settlement Fund (including accrued interest thereon and any funds received by Lead Counsel consistent with ¶ 21 above), less any expenses and any costs which have either been disbursed or incurred and chargeable to Notice and Administration Costs, and less any Taxes paid or due or owing, shall be refunded by the Escrow Agent to ITG and/or the Insurers (in proportion to the amount contributed by each).  In the event that any funds received by any of Lead Counsel or Lead Plaintiff have not been refunded or repaid (as provided for by ¶ 21 hereto) within the five (5) business days specified in the first sentence of this paragraph, and are thereafter refunded or repaid to the Escrow Account, those funds shall be refunded or repaid by the Escrow Agent to ITG and/or the Insurers (in proportion to the amount contributed by each) immediately upon any deposit of such funds into the Escrow Account.

39.    Lead Plaintiff and Defendants shall each have the right to terminate the Settlement and this Stipulation, by providing written notice of their election to do so

("Termination Notice") to the other Parties to this Stipulation within thirty (30) days of:  (a) the Court's declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve the Settlement or any material part thereof; (c) the Court's declining to enter the Judgment in any material respect as to the Settlement; or (d) the date upon which the Judgment is modified or reversed in any material respect by the United States Court of Appeals for the Second Circuit or the United States Supreme Court, in which event the provisions of ¶ 38 above shall apply.  However, any decision or proceeding, whether in this Court or any appellate court, with respect to an application for attorneys' fees or reimbursement of Litigation Expenses (including an application made under the PSLRA for an award to Lead Plaintiff of its reasonable costs and expenses) or with respect to any plan of allocation shall not be considered material to the Settlement, shall not affect the finality of any Judgment, and shall not be grounds for termination of the Settlement.  Lead Plaintiff also may, in its sole discretion, terminate the Settlement after completion of confirmatory discovery in accordance with ¶ 3 above.

40.     If a portion of the Class, equal to or greater than the portion specified in the separate supplemental agreement between Lead Plaintiff and Defendants (the "Supplemental Agreement") delivers timely and valid requests for exclusion from the Class, then ITG shall have the option to terminate the Settlement and this Stipulation pursuant to the terms set forth in the Supplemental Agreement.  The Supplemental Agreement, which is being executed concurrently herewith, shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than to the extent of the general statements made herein and (if necessary) general statements to this same effect in the Notice, or as otherwise provided in the Supplemental Agreement) unless and until the Court otherwise directs or a dispute arises between Lead Plaintiff and Defendants concerning its interpretation or application.  If submission of the Supplemental Agreement is required for resolution of a dispute or is otherwise ordered by the Court, Lead Plaintiff and Defendants will undertake to have the Supplemental Agreement submitted to the Court *in camera*.

## XII.   NO ADMISSION OF WRONGDOING

41.   Each of the Defendants denies any wrongdoing, and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants, or any other of the Defendant Released Parties, with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have, or could have, asserted.  Defendants expressly deny that Lead Plaintiff has asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing or damages whatsoever.  Neither the Term Sheet, this Stipulation (whether or not the Settlement is consummated), including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Term Sheet and this Stipulation, nor any proceedings taken pursuant to or in connection with the Term Sheet, this Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a)   shall be offered against any of the Defendants or Defendant Released Parties as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendant Released Parties with respect to the truth of any fact alleged by Lead Plaintiff or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendant Released Parties or in any way referred to for any other reason as against any of the Defendant Released Parties, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

(b)   shall be offered against any of the Plaintiff Released Parties, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiff Released Parties that any of their claims are without merit, that any of the Defendant Released Parties had meritorious defenses, or that damages recoverable under the

Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiff Released Parties, in any civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

(c)     shall be construed against any of the Released Parties as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial;

provided, however, that if this Stipulation is approved by the Court, the Parties and the Released Parties and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement; and provided further that nothing herein shall limit the materials or evidence that may be offered or referred to by Defendant Released Parties in disputes, actions, or proceedings arising between any Defendant Released Party and any Insurer.

## XIII.   MISCELLANEOUS PROVISIONS

42.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.  Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

43.     ITG warrants and represents as to itself that it is not insolvent within the meaning of 11 U.S.C. § 101(32) as of the time this Stipulation is executed and as of the time any payments by it are actually transferred or made as provided for in this Stipulation.

44.     In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of Defendants to be a preference, voidable transfer, fraudulent transfer, or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the

Settlement Fund by others, then, at the election of Lead Plaintiff, Lead Plaintiff and Defendants shall jointly move the Court to vacate and set aside the Releases given and the Judgment entered in favor of Defendants and the other Released Parties pursuant to this Stipulation, in which event the Releases and Judgment shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in ¶ 38 above and any cash amounts in the Settlement Fund (less any Taxes paid, due or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid or payable) shall be returned as provided in ¶ 38.

45.     The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Lead Plaintiff and any other Class Members against any and all of the Defendant Released Parties with respect to any and all of the Settled Claims.  Accordingly, Lead Plaintiff and its counsel and Defendants and their counsel agree not to assert in any forum that this Action was brought by Lead Plaintiff or defended by Defendants in bad faith or without a reasonable basis.  No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of this Action.  Lead Plaintiff, Defendants, and their respective counsel shall not make any applications for sanctions, pursuant to Rule 11 of the Federal Rules of Civil Procedure or other court rule or statute, with respect to any claims or defenses in the Action.  While retaining their right to deny liability, Defendants agree that, based upon the publicly available information at the time, this Action was filed and prosecuted in good faith and with an adequate basis in fact, was not frivolous, and is being settled voluntarily by Defendants after consultation with competent legal counsel.  Lead Plaintiff agrees that, based upon publicly available information at the time, positions taken in this action by Defendants were taken in good faith and with an adequate basis in fact, and were not frivolous.

46.     The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties, including through a mediation process conducted and supervised by Mr. Geronemus, and reflect a settlement that was reached

voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

47.     Defendants shall determine the form of notice to be provided for the purpose of satisfying the requirements of the Class Action Fairness Act ("CAFA Notice") and the identity of those who will receive the CAFA Notice.  Defendants shall be responsible for mailing the CAFA Notices and for all costs and expenses related thereto.

48.     The Parties agree that any public comments from the Parties regarding the Settlement or this Stipulation, other than ITG's public disclosures and any other disclosures required by law, will not substantially deviate from words to the effect that the Parties have reached a mutually acceptable resolution by way of a mediated settlement and both sides are satisfied with this resolution.

49.     The Parties agree to take no action in connection with the Settlement that is intended to, or that would reasonably be expected to, harm the reputation of any other Party (including a Party's officers, directors, employees, associates, agents, or attorneys), or that would reasonably be expected to lead to unfavorable publicity for any other Party.

50.     The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived, except by a writing signed on behalf of both Lead Plaintiff and Defendants (or their successors-in-interest).

51.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

52.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of:  (a) entering orders providing for awards of attorneys' fees and Litigation Expenses to Lead Counsel and/or an award to Lead Plaintiff made pursuant to the PSLRA for reasonable costs and expenses (including lost wages); and (b) enforcing the terms of this Stipulation,

including the Plan of Allocation (or such other plan of allocation as may be approved by the Court) and the distribution of the Net Settlement Fund to Class Members.

53.    The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

54.    This Stipulation and its exhibits and the Supplemental Agreement constitute the entire agreement among Lead Plaintiff and Defendants concerning the Settlement and this Stipulation and its exhibits.  All Parties acknowledge that no other agreements, representations, warranties, or inducements have been made by and between any Party hereto concerning this Stipulation, its exhibits or the Supplemental Agreement other than those contained and memorialized in such documents.

55.    This Stipulation may be executed in one or more counterparts, including by signature transmitted via facsimile, or by a .pdf/.tif image of the signature transmitted via email. All executed counterparts and each of them shall be deemed to be one and the same instrument.

56.    This Stipulation shall be binding upon and inure to the benefit of the successors and assigns of the Parties, including any and all Released Parties and any corporation, partnership, or other entity into or with which any Party hereto may merge, consolidate, or reorganize.

57.    The construction, interpretation, operation, effect, and validity of this Stipulation, the Supplemental Agreement, and all documents necessary to effectuate the Settlement shall be governed by the internal laws of the State of New York without regard to conflicts of laws, except to the extent that federal law requires that federal law govern.

58.    Any action arising under or to enforce this Stipulation or any portion thereof, shall be commenced and maintained only in the Court, and the Parties agree to submit themselves to the jurisdiction of the Court in any such action.

59.    This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations

between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

60.     All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

61.     Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

62.     If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or facsimile or email transmission, with confirmation of receipt.   Notice shall be provided as follows:

|  |  |
|---|---|
| If to Lead Plaintiff or Lead Counsel: | MOTLEY RICE LLC<br>Attn:  Gregg S. Levin, Esq.<br>           Lance V. Oliver, Esq.<br>28 Bridgeside Boulevard<br>Mount Pleasant, SC  29464<br>Telephone: (843) 216-9000<br>Facsimile:  (843) 216-9450<br>Email:        GLevin@motleyrice.com<br>                  LOliver@motleyrice.com<br><br>MOTLEY RICE LLC<br>Attn:  William H. Narwold, Esq.<br>One Corporate Center<br>20 Church Street, 17th Floor<br>Hartford, CT  06103<br>Telephone: (860) 882-1681<br>Facsimile:  (860) 882-1682<br>Email:        BNarwold@motleyrice.com |

If to Defendants:

WACHTELL, LIPTON, ROSEN & KATZ
Attn:  Warren R. Stern, Esq.
      Charles P. Griffin, Esq.
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000
Facsimile:  (212) 403-2000
Email:     WRStern@wlrk.com
            CPGriffin@wlrk.com

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Attn:  John F. Baughman, Esq.
      Kristina A. Bunting, Esq.
1285 Avenue of the Americas
New York, NY  10019
Telephone:  (212) 373-3000
Facsimile:  (212) 757-3990
Email:     JBaughman@paulweiss.com
            KBunting@paulweiss.com

With a copy to:

INVESTMENT TECHNOLOGY GROUP, INC.
Attn:  Angelique DeSanto, Esq.
One Liberty Plaza
165 Broadway
New York, NY  10006
Telephone:  (212) 588-4000
Email:     Angelique.DeSanto@itg.com

63.     Except as otherwise provided herein, each Party shall bear its own costs.

64.     Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the Stipulation confidential; provided, however, that this paragraph:  (i) shall not prevent the Parties from making any filings or taking any other action necessary to obtain the Court's approval of the Settlement, consistent with this

Stipulation; (ii) shall not prevent the Defendant Released Parties from making disclosures to Insurers, auditors, attorneys, officers, directors, or associates, or to others as may be required by law; , and (iii) shall not limit the materials or evidence that may be offered or referred to by Defendant Released Parties in disputes, actions, or proceedings arising between any Defendant Released Party and any Insurer.

65.    All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

66.    No opinion or advice concerning the tax consequences of the proposed Settlement to individual Class Members is being given or will be given by the Parties or their counsel; nor is any representation or warranty in this regard made by virtue of this Stipulation.  Each Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Class Member.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of the 6th day of August, 2018.

DATED:  August 6, 2018

**MOTLEY RICE LLC**

By: _____

Gregg S. Levin
28 Bridgeside Boulevard
Mount Pleasant, SC  29464
Telephone:   (843) 216-9000

*Lead Counsel and Counsel for Lead Plaintiff*
*Metzler Asset Management GmbH*

34

**IN WITNESS WHEREOF**, the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of the 6th day of August, 2018.

DATED:  August 6, 2018                    **WACHTELL, LIPTON, ROSEN & KATZ**

By: _Warren R. Stern_ /cvb/

Warren R. Stern
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 403-1000

*Counsel for Defendant Investment Technology Group, Inc.*

DATED:  August 6, 2018                    **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: _____

John F. Baughman
1285 Avenue of the Americas
New York, NY 10019
Telephone:  (212) 373-3000

*Counsel for Defendant Robert C. Gasser*